**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| Cary Site Plan Application | } | Docket No. 183-9-05 Vtec |
| (Appeal of Cary) | } | |
| | } | |

## Decision and Order on Motion for Summary Judgment

This matter concerns an appeal by James C. Cary from the decision of the Town of Milton (Town) Development Review Board (DRB), denying site plan approval for his proposed thirty-eight unit multi-family building off of Centre Drive. Appellant Cary is represented by Allan W. Ruggles, Esq., and the Town is represented by Gregg H. Wilson, Esq.

Appellant has moved for summary judgment on whether his proposed multi-family building meets the site plan review standards contained in Zoning Regulations § 802.3. At issue is the adequacy of the site plan and its impact on traffic circulation, parking and loading facilities; the adequacy of the site plan's traffic study; the adequacy of the site plan's landscaping, screening and outdoor lighting; and the suitability of the site for the proposed development, particularly as it relates to the proposal's storm water management system. The Town has not responded to Appellant's motion. Nevertheless, we must evaluate Appellant's site plan in accordance with the site plan review standards in Zoning Regulations § 802.3.

## Factual Background

The following material facts are undisputed:

1.      Appellant's application for site plan approval consists of a rectangular, 65´ x 22.5´,[1] thirty-eight unit multi-family residence, entitled Marketplace Condominiums, with a fifty-seven-space, two-level parking garage located on the northerly side of the parcel. Each of the thirty-eight units is proposed to contain two bedrooms. Appellant's lot is westerly of Centre Drive in the Milton Crossroads Marketplace Center (M1) zoning district.

2.      Appellant's parcel is an interior[2] 1.24-acre lot that is roughly shaped like a right triangle with sides of approximately 260, 304 and 457 feet. The hypotenuse of the triangle is on the northerly side of the lot. The lot is accessed by a sixty-foot-wide right-of-way from Centre

---

[1]  This measurement is approximate, as it was taken by scale from Appellant's site plan.

[2]  Meaning a lot without road frontage. Access is over a right of way from Centre Drive.

Drive. The right-of-way is proposed to be improved by paving a twenty-four-foot-wide access driveway to serve Appellant's condominium building. Appellant also proposes to construct sidewalks along the access right-of-way and in front of the multi-family building.

3. Appellant's parcel is surrounded by commercial and religious uses with a Building Home Center and auto repair shop to the north, a pizza pub and self storage facility to the east, a fitness center to the south and the Assemblies of God church to the west.

4. Appellant's proposal, properly characterized as a multi-family dwelling, is a permitted use in the M1 District, Zoning Regulations § 412(3), and satisfies all of the M1 District's dimensional standards, including the minimum lot size of 5,000 square feet, the minimum front setback from zero to twenty feet, the 40% building coverage limit, the 80% lot coverage limit, the five-story or seventy-foot building height limit and the 65,000 square-foot building footprint limit, all as per Zoning Regulations § 414. Appellant's proposed development is on a lot that is approximately 39,520 square feet in area, has a lot coverage of 67.1%, has a building coverage of 33.7%, has a building footprint of 18,200 square feet and has a height of seventy feet. Appellant's proposal also meets the Zoning Regulations' parking standards of 1.5 spaces per unit for apartments, as the proposal calls for a total of fifty-seven parking spaces.

5. In addition to the twenty-four-foot-wide access road from Centre Drive, Appellant proposes that the road split to create a Y-shaped driveway with a twenty-four-foot-wide section running northeasterly along the parcel's southeasterly boundary and another twenty-four-foot-wide driveway running northwesterly along the parcel's southwesterly border. Each of the two driveways on the parcel serves the two-level parking garage in the rear of the building. The southeasterly and southwesterly driveways are connected by a fifteen-foot-wide loading/unloading driveway that runs along the façade of the multi-family building. This loading/unloading driveway is proposed to be covered by a canopy that extends twenty-five feet from the front of the building.

6. In conjunction with his application for site plan approval, Appellant arranged for a traffic management plan to be prepared that estimates the number of vehicles added to the surrounding roadways, based on the Institute for Transportation Engineers (ITE) Trip Generation Manual. During the average weekday, 224 trips will be generated by the thirty-eight-unit condominium building, with seventeen trips during the A.M. peak hour and with twenty trips during the P.M. peak hour. Appellant's traffic study also evaluated the three access points at

2

which the condominium proposal would generate turning movements during the A.M. and P.M. peak hours—at U.S. Route 7 and Bombardier Road, Bombardier Road and Centre Drive, and U.S. Route 7 and Centre Drive. The study found that only at Centre Drive and U.S. Route 7 would more than five turning movements be made in the A.M. peak hour.

7. Appellant also submitted a landscaping plan with his site plan review application in which he proposes spending $10,915.50 to screen the proposed multi-family building from U.S. Route 7 and surrounding properties. Appellant proposes planting numerous trees around the outside of the building and property, including Norway Spruce, Autumn Blaze Callery Pear, Winter King Green Hawthorn, Louisa Crabapple and Chancellor Littleleaf Linden. Appellant's landscaping has been redesigned since its original proposal so as to not interfere with power lines and fire trucks responding to an emergency. The trees are proposed to be planted close to each other to achieve the desired level of screening from the neighboring commercial uses and U.S. Route 7. Appellant has yet to outline how he will produce a landscaping performance bond, which is required before the issuance of a zoning permit for the project.

8. The Town Water/Wastewater Superintendent expressed a concern that "[t]here are several plantings that are directly over or within the tree fall of the sewer and water systems. The plantings should be located so that their root systems will not infiltrate the sewer or water joints." Appellant offered no evidence in response to the Superintendent's concerns, nor does Appellant counter the Superintendent's conclusions about his planting plan.

9. Appellant also proposes to include a storm water management system with his development of the multi-family building that has the capacity to handle a ten-year, twenty-four hour storm and that complies with the goals and requirements of the Vermont Stormwater Management Manual. Because a majority of the existing, highly permeable soils (with a high permeability rate of 6.3 to 20 inches per hour) will be replaced by impervious surfaces, Appellant proposes installing a subsurface infiltration chamber system consisting of one isolator row contained in four chamber rows to prevent runoff from reaching neighboring properties. The chambers of the subsurface infiltration system will be installed under the two driveways on Appellant's parcel and are strong enough to withstand travel on the driveways by tractor-trailers and fire trucks. The system works by trapping dirt, sediment and other material by settling and filtration in the isolator row. The isolator row then allows filtered water to flow vertically and horizontally into the other storage chambers. One of the principle benefits of this type of system

is that only occasional periodic maintenance is needed to clean debris, sediment, and dirt from the isolator row, and that the other storage chambers holding the filtered water rarely need maintenance.

10.     Appellant submitted a detailed lighting plan with lighting specifications for his proposed development.  All lights will be downcast to minimize direct illumination of surrounding properties.

### Discussion

Appellant has moved for summary judgment on the adequacy of his site plan and its traffic study, landscaping plan and stormwater management system.  The Town has not responded to Appellant's motion.  The DRB approved many aspects of Appellant's site plan, including that it complied with the standards enumerated in Zoning Regulations §§ 802.3(a), (b), (e) and (g).  These aspects of the DRB's decision were not appealed.  We therefore will only address those aspects of the plan which were appealed and not approved below, specifically the site plan's compliance with the standards in Zoning Regulations §§ 802.3(c), (d) and (f).

Appellant contends that the traffic study of his proposal is adequate and satisfies Zoning Regulations § 802.3(c).  This Regulation requires the DRB, and this Court in this de novo appeal, to review the impacts of the proposed thirty-eight unit multi-family building on the capacity of roadways and other transportation facilities in the vicinity.  Appellant's traffic study is succinct. However, nothing in the zoning ordinance requires a detailed traffic study.  The undisputed representation is that state policy only requires a detailed traffic study when more than seventy-five peak hour trips are generated.  See Bell Aff. ¶ 2.  Appellant's development is projected to produce far fewer trips.

The proposed project, with thirty-eight two-bedroom units, only creates seventeen A.M. peak hour and twenty P.M. peak hour trips per day.  Thus, nothing presented to this Court indicates that Appellant's traffic study needs to be more detailed. Moreover, Appellant's study properly evaluated the peak hour turning movements at the three intersections most impacted by the proposal.  We conclude that those projected impacts on peak hour traffic are minimal, since the undisputed evidence reveals only one instance where there are greater than five turning movements at one location.

It appears that the Town is concerned about the overall flow and amount of traffic near Appellant's project, as the Town has decided to study traffic in the area and will include

Appellant's project in that study. But the Town has also chosen to not file opposition to Appellant's pending motion. We therefore only have before us the traffic study submitted by Appellant. No evidence before us provides a foundation upon which we may conclude that Appellant's traffic study is inadequate.

Our analysis of Appellant's traffic study leads us to conclude that the proposed project will have a slight impact on the capacity of roads and other transportation facilities in the area, but will not cause an undue or adverse impact. We therefore conclude that Appellant's project satisfies Zoning Regulations § 802.3(c).

Appellant has also not received approval for his proposed storm water management system under Zoning Regulations § 802.3(f), which requires that the site for the development be suitible for its scope, "including due regard for the preservation of existing natural and historical resources." Zoning Regulations § 802.3(f). There is no evidence presented to this Court that the site contains or is located in close proximity to natural or historic resources.

Appellant proposes constructing a subsurface collection and infiltration chamber system consisting of one isolator row and a number of collection chambers. The system was designed with the capacity to handle a ten-year, twenty-four hour storm. The undisputed evidence reveals that the proposed system complies with the goals and requirements of the Vermont Stormwater Management Manual.

Some concerns were raised below regarding the proposed system's maintenance and performance under cold weather conditions. Appellant's project manager produced evidence, not contradicted below or by any filing here, that winter weather conditions have little impact on the proposed system, based on the performance of thirty previously-installed systems in Maine, New Hampshire and Massachusetts that are identical to the proposed subsurface infiltration chamber system. As to concerns regarding the proposed system's maintenance, Appellant's project manager also represented that after an initial maintenance check six months after installation, maintenance of the proposed system need only be conducted every five years. The project manager's representation is uncontested.

Appellant has produced sufficient evidence for us to conclude that the proposed storm water management system is adequate and renders Appellant's parcel suitable for the proposed development. Appellant's site plan therefore satisfies Zoning Regulations § 802.3(f).

Lastly, Appellant maintains that his landscaping plan is adequate and satisfies the site plan review standards that require adequacy of landscaping, screening and outdoor lighting. Zoning Regulations § 802.3(d). The primary landscaping concern presented in this project is the need to screen the multi-family residential property from neighboring commercial uses, including the neighboring lumber yard, self-storage units and pizza pub. This landscaping project is made more challenging by the fact that the project site is relatively small for the proposed use (i.e.: a 1.24-acre lot to accommodate 38 two-bedroom residential units and an associated parking garage).

After an initial meeting with the DRB and other municipal officers, Appellant revised his landscaping plan to address concerns of the fire chief and members of the DRB that the proposed trees not interfere with emergency access to the property. Appellant has proposed various tree species to be planted on site that, according to Appellant's project manager, would succeed in screening the property, even though the parcel has well-drained soils. While none of these tree species are the suggested American Arborvitae, Appellant's conclusion that the proposed species will afford successful screening for the proposed thirty-eight unit multi-family building is not contested in the record before us.

We conclude on the record before us that the trees on Appellant's landscaping plan will provide adequate screening for the proposed building. However, some trees will be planted directly over the proposed water and sewer lines serving the multi-family building. As the Town Water/Wastewater Superintendent noted, the roots of these trees have the potential to interfere with the project's water and sewer lines. Appellant offered no evidence in response to the Superintendent's concerns, nor did Appellant counter these concerns about his planting plan.

To receive site plan approval, Appellant must either suggest an alternate landscaping plan or relocate those trees that will be planted directly over the top of any water and sewer lines, thereby creating a risk of damage and interference with those lines. Specifically, Appellant must relocate the Chancellor Littleleaf Lindens and Winter King Green Hawthorns that are proposed to be planted above a proposed water line on the parcel's southerly and easterly borders and the Autumn Blaze Callery Pear trees that are proposed to be planted over the proposed sewer line on the southerly side of the multi-family building and its garage.

Without relocating these tree species so that they will not interfere with water and sewer service to the project, we cannot find that the project's landscaping is adequate. Therefore, we

cannot grant Appellant summary judgment on this limited issue unless and until Appellant can convince this Court that his planting plan will not interfere with the water and sewer lines, and thus be in compliance with Zoning Regulations § 802.3(d). Given that it is possible that Appellant could correct this deficiency in his landscape plan with somewhat minor modification, we will allow Appellant the opportunity to provide a planting plan to the Court and the Town, through a supplemental filing made in connection with either a supplemental summary judgment motion or request for a site visit and merits hearing. The Court respects the limits of its jurisdiction and does not intend to violate the prohibition against review of applications not first considered by the appropriate municipal panel below. In re Torres, 154 Vt. 233, 235 (1990) ("The reach of the [Environmental Court] in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader."). However, the revision to Appellant's landscaping plan may be minor in nature, thereby allowing this Court to consider such an amendment within the context of the pending application. In re Appeal of Lorentz, 2003 VT 40, ¶ 5, 175 Vt. 522, 523 (mem.).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's motion for summary judgment is **GRANTED** in part, specifically as to our determination that Appellant's traffic management plan complies with Zoning Regulations § 802.3(c) and his storm water management plan satisfies Zoning Regulations § 802.3(f). However, Appellant's summary judgment motion is **DENIED**, as to Zoning Regulations § 802.3(d) because the landscaping plan does not adequately address the unrefuted concerns regarding root infestation into the water and sewer line joints.

Appellant is to notify the Court by **Tuesday, September 5, 2006,** as to whether he will be submitting a revised landscaping plan, when the plan will be completed, and when Appellant-Applicant and his witnesses will be available for the Court to conduct a site visit and hearing on the merits on the remaining issues in this case.

Done at Berlin, Vermont, this 2nd day of August, 2006.

_____
Thomas S. Durkin, Environmental Judge

7